<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MISTY L. DEGROAT, | Case No.:  2:16-cv-06257 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| NANCY A. BERRYHILL, | |
| Defendant. | |

**APPEARANCES:**

FREDERICK MICHAEL FRIEDMAN
340 N. LANDSDOWNE AVE.
P.O. BOX 467
DREXEL HILL, PA 19026
    On behalf of Plaintiff

MARGARET WINSLOW REED
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123
    On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Misty L. Degroat for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401,

et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying

the application; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes

Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case in accordance with the following instructions.

## I.    PROCEDURAL HISTORY

On February 20, 2013, Plaintiff protectively filed an application for DIB alleging a disability onset date of September 6, 2012.  (R. 157-59.)[2]  On April 15, 2013, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 75.)  Plaintiff filed for reconsideration, and her application was again denied on August 22, 2013.  (R. 85.)  On January 5, 2015, an Administrative Law Judge held a hearing on Plaintiff's application at which Plaintiff was represented by counsel.  (R. 41-74.)  On March 12, 2015, the ALJ issued a decision denying Plaintiff's application.  (R. 24-38.)  On August 12, 2016, the Appeals Council denied Plaintiff's - appeal (R. 1-5), thereby affirming the ALJ's decision as the "final" decision of the Commissioner. On October 1, 2016, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3).  ECF No. 1.  On June 13, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner[.]"  *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner*, Social Security Administration, Government Accountability Office (Mar. 6, 2018). However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the defendant in this suit.

[2] "R." refers to the continuous pagination of the administrative record.  ECF No. 10.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 20.[3]  The case was reassigned to the undersigned Magistrate Judge on June 27, 2018.

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

This Court has plenary review of legal issues decided by the ALJ in reviewing applications for DIB.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000));

*see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed

and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Standard for Awarding Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for DIB based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505(a). An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment must be established by objective medical evidence from an acceptable medical source and cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id*. § 404.1521.

The process for determining an adult's claim for DIB involves a five-step sequential inquiry. 20 C.F.R. § 404.1520(a)(4).[4] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id*. § 404.1512; *see Holley v. Colvin*,

---

[4] This case arises from a claim filed on October 21, 2013 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017.").

975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. § 404.1523(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id*. §§ 404.1572(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this step, the ALJ decides whether the claimant has an impairment or a combination of such impairments that is severe. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. § 404.1522. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the claimant's specific impairment is not listed, the ALJ

will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id.* § 404.1526(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* § 404.1509.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id.* §§ 404.1560, 404.1565. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. Otherwise, the claimant is not disabled.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms

result in exertional and/or non-exertional limitations. The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. §§ 404.1569a(a) & (b). Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*. § 404.1569a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2. 20 C.F.R. § 404.1569a(b). The Grid Rules reflect various combinations of RFC, age, education, and work experience and direct a finding of disabled or not disabled for each combination. If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations. *Id*. § 404.1569a(d). If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id*. § 404.1569a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was forty-nine years old on her alleged onset date (September 6, 2012). (R.157.) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016. (R. 29.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 29.) At Step Two, the ALJ found that

Plaintiff had the following severe impairments: lumbar disc displacement, diabetes mellitus, migraines accompanying neck pain, and kidney disease. (R. 29.) Also at Step Two, the ALJ found that Plaintiff suffered from hypertension, but that it was non-severe. (R. 29.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing. (R. 30.) At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work subject to various exertional and non-exertional limitations. (R. 30.) The ALJ also found at Step Four that Plaintiff was able to perform her past relevant work. (R. 34.) The ALJ concluded that Plaintiff was not disabled at any time between the alleged onset date and the decision date. (R. 34.)

Plaintiff contends that the case should be remanded for further proceedings because of numerous reversible errors at Steps Three and Four of the sequential analysis.[5] First, Plaintiff argues that the ALJ erred in her analysis of Listing 1.04 (Disorders of the spine) and Listing 6.05 (Chronic kidney disease). Second, Plaintiff argues that the ALJ erred as to the RFC finding: by relying on an EMG studies report to reject handling or fingering limitations; by failing to consider Plaintiff's frozen left shoulder; and by ascribing too little weight to a treating physician's opinion. Third, Plaintiff argues that the ALJ erroneously discounted Plaintiff's subjective symptoms. Fourth, Plaintiff argues that the VE's testimony lacked foundation and that the ALJ's past relevant work finding did not comply with Social Security Ruling 96-8p. Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal

---

[5] Plaintiff faults the ALJ for not "mentioning" whether Plaintiff's frozen left shoulder was a severe or non-severe impairment. ECF No. 15 at 29; *see id.* at 30 ("The ALJ appears to determine that, because the MRI does not show a growing tumor, this is not a significant impairment.") The Court need not decide whether Plaintiff's summary criticism of the ALJ's Step Two findings constitutes adequate briefing because that argument fails as a matter of law. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("[I]f the ALJ found in [the claimant's] favor at Step Two, even if [the ALJ] had erroneously concluded that some of [the claimant's] other impairments were non-severe, any error was harmless.").

standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    <u>**Non-Medical Evidence.**</u>

The ALJ's decision accurately summarized Plaintiff's testimony during the January 2015 hearing:

> During the hearing, the claimant testified that except for one half day on October 22, 2012, her last day of work was September 6, 2012. She said that she worked for American Express, where she injured her back and neck. She described having heaviness on her chest, pain down her left arm, vomiting and sweating. Since she thought it was a heart attack, she went to an emergency room. It turned out that she had a pinched nerve and disc bulges in the neck and lower back. She indicated that her symptoms have gotten worse and she now has pain in her neck radiating down both arms (right arm for 1.5 months) with little mobility. She said she could not brush her hair in back; could not lift overhead; could not sweep/mop or pick up her grandchildren; could not make her bed by herself; and could not sit for longer periods of time. She related that she was also diabetic and her sugars were out of control, despite being on three different insulins and six injections a day. The claimant stated that her back started hurting after sitting in a wooden or metal chair for about 15 minutes; and a bit longer in a chair with a cushion. She said she could not walk for long. She stated that when she was in the mall, she would walk to one store and had to sit down. The claimant indicated that things would just drop out of her hand. She said that her hand felt like it was falling asleep. She explained that the numbness in the right hand was getting to be more constant. She described having had epidurals in her neck and lower back, and a discogram and disc scraping on the left side, but she could not continue with the process for the right side because she lost medical coverage. She said the relief only lasted for about five months; and was worse when it returned.

> The claimant testified that she would work during the treatment for five days and then two and then three off. She indicated that her neck/back injury was in February 2012. She explained she was working on her computer picking up the telephone and holding the receiver on her neck and not allowed to stand up. She said she had to sit and make so many calls in a day. She described her current daily activities as including checking her blood sugar, having a cup of tea and breakfast, going on the computer for a bit and putting laundry away. She indicated that she had not been driving because she kept blacking out. She said that in September, she had had a kidney biopsy. She related that she now blacks out and her blood pressure gets very low. She gave an example of when she was going upstairs the day before the hearing and just blacked out. She said that testing including MRIs, EEG of her

brain and an MRI of her lungs.  She said her lymph nodes in her lungs were enlarged.

(R. 30-31.)  This testimony was mostly consistent with Plaintiff's Function Report dated March 7, 2013 (R. 178-85) and Disability Reports dated April 19 and September 13, 2013 (R. 193-203), except that none of those Reports referenced blackouts or hand numbness.  Plaintiff's Function Report also indicated that she used a handheld cane that was not prescribed by a medical professional.

> **B.**   **Medical Evidence.**
>
> **1.  Treating Providers.**

The record contains treatment notes from Dr. George Guariglia (family medicine) for the period from February 2012 to September 2013.  (R. 286-320, 327-468, 475-480.) On February 20, 2012, Plaintiff advised Dr. Guariglia that she had been to the emergency room for chest and shoulder pain on the left side.  His physical examination findings included:  normal range of motion in the cervical and lumbosacral spines; normal range of motion in the upper and lower extremity joints; normal gait, motor strength, and sensations; and negative Babinski test.  Dr. Guariglia ordered x-rays and an MRI of Plaintiff's left shoulder.  He also performed a trigger point injection into her left shoulder and prescribed Mobic and Zanaflex.  Plaintiff returned to Dr. Guariglia on the following day and complained of neck and left shoulder pain.  His physical examination findings were the same, except that Plaintiff had decreased range of motion in the cervical spine. On April 23, 2012, Plaintiff saw Dr. Guariglia for neck and shoulder pains.  He observed decreased range of motion in the cervical and lumbosacral spines; decreased range of motion in the lower extremity joints; and otherwise normal musculoskeletal and neurological findings.  On July 10, 2012, Plaintiff saw Dr. Guariglia for neck pain that radiated into her back and caused her arms to go numb.  He observed decreased range of motion in the cervical spine but otherwise normal

musculoskeletal and neurological findings. On October 2, 2012, Plaintiff saw Dr. Guariglia for an earache. He observed decreased range of motion in the cervical spine and pain with palpation, but otherwise normal musculoskeletal and neurological findings. On February 4, 2013, Dr. Guariglia noted that Plaintiff "is here because her pain management doctor wants to put her on permanent disability but she needs to go over it with her PCP first." He observed normal musculoskeletal and neurological findings.[6] On March 25, 2013, Dr. Guariglia completed a General Medical Report form. (R. 321-26.) He advised that Plaintiff had a history of high blood pressure, disc disease, diabetes, and lipidoses. He noted that Plaintiff was unable to squat; could walk limited distances on heels and toes; had bilateral muscle weakness rated 3 on a 5-point scale; and did not use a handheld assistive device. Dr. Guariglia opined that Plaintiff could stand and/or walk less than 2 hours per day; could sit less than 6 hours per day; could occasionally lift/carry up to 5 pounds; and had unspecified pushing/pulling limitations.

The record contains treatment notes from Dr. Allan Weissman (pain management) for the period from July 2012 to February 2013. (R. 217-85, 332-468.) Physical findings from Dr. Weissman's initial evaluation in July 2012 included: limited flexion, muscle spasms, and tenderness on palpation in the cervical and lumbar spines; abnormal gross motor testing in the upper and lower extremities; diminished reflexes and sensitivity in the upper and lower extremities; and that Plaintiff did not require an assistive device. Dr. Weissman ordered an MRI of Plaintiff's cervical and lumbar spines, and EMG studies on Plaintiff's upper and lower extremities. On August 1, 2012, an MRI of Plaintiff's cervical spine revealed: a central posterior

---

[6] Plaintiff saw Dr. Guariglia for unrelated medical issues in 2012 (February 10, April 6, June 2, July 23, and December 6) and 2013 (September 29). His physical findings during each examination included: normal range of motion in the cervical and lumbosacral spines; normal range of motion in the upper and lower extremity joints; normal gait, motor strength, and sensations, and negative Babinski test.

herniation of the C3/4 inter vertebral disc impinging upon the thecal sac and the underlying cervical spinal cord causing mild stenosis of the spinal canal; an anterior and posterior bulge of the C4/5 intervertebral disc, with a superimposed left paracentral posterior herniation impinging upon the thecal sac and the underlying cervical spinal cord and causing moderate stenosis of the spinal canal; an anterior and posterior bulge of the C5/6 intervertebral disc impinging upon the thecal sac causing moderate stenosis of the spinal canal and right neural foramen and severe stenosis of the left neural foramen; an anterior and posterior bulge of the C6/7 intervertebral disc impinging upon the thecal sac; and reversal of the cervical lordosis, which may be secondary to the presence of pain and/or muscle spasm.  Also on August 1, 2012, an MRI of Plaintiff's lumbar spine revealed:  a broad-based mild posterior bulge of the L4/5 intervertebral disc causing mild stenosis of the right neural foramen, with a superimposed large left posterior herniation impinging upon the left neural foramen, causing severe stenosis and impinging upon the left L4 nerve root.[7] Plaintiff underwent paravertebral facet joint blocks (August 1, 15 & 29, 2012; November 7, 2012); lumbar epidural steroid injections (September 12, 2012; October 3 & 17, 2012; December 18, 2012; January 3, 16 & 30, 2013; February 12, 2013); trigger point injections (October 3, 2012); facet joint radiofrequency denervation rhizotomy at L4, L5, and S1 (November 20, 2012); and a discogram at L4-L5 and L5-S1 (February 26, 2013).  On March 4, 2013, Dr. Weissman completed a General Medical Report form.  (R. 327-31.)  The Court discusses Dr. Weissman's opinion later in this opinion.

    The record contains treatment notes from Dr. Rengaswamy Asokan (internist) for the period from January to July 2014.  (R. 487-520.)  However, as Plaintiff's counsel acknowledges,

---

[7] The Court cannot locate any EMG studies reports in the record.

these records are handwritten and illegible.  *See* ECF No. 15 at 12 ("most of the notes are so difficult to read that counsel is not attempting to summ[a]rize these notes").

The record contains treatment notes from Dr. Vincent Graziano (nephrologist) for the period from June to November 2014.  (R. 521-57.)  Plaintiff stated during her initial evaluation in June that she has been a diabetic for 25 years but, after losing her medical insurance, did not have any diabetic management "for a while."  Dr. Graziano diagnosed suspected chronic kidney failure caused by diabetic nephropathy.  During a follow-up visit in July, Dr. Graziano explained that serologic testing was negative for causes of her kidney disease other than suspected diabetic nephropathy.  During a follow-up visit in August, Dr. Graziano explained that a renal sonogram revealed no evidence of renal artery stenosis, that her kidneys were anatomically normal and not echogenic, and that her kidney function was relatively stable.  Despite Dr. Graziano's opinion that it would not be reasonable to perform a renal biopsy, Plaintiff wanted to ensure that she did not have any reversible form of kidney disease.  A renal biopsy pathology report dated September 10 revealed advanced diabetic nephropathy; mild diabetic glomerulopathy, class IIA-B; variable global ischemic collapse and global glomerulosclerosis (25/91, 36/91); extensive ischemic tubular atrophy, simplification and mild interstitial fibrosis (>80%); arterio- and arteriosclerosis severe; and no proliferative or immune complex-mediated glomerular lesions.  The report noted that "[w]hile the renal parenchymal changes of diabetic nephropathy per se appear mild," other findings "all indicate progressive vascular sclerosis, out of proportion to the level of diabetic nephropathy."  During a follow-up visit in September, Dr. Graziano diagnosed stage III chronic kidney disease from vascular diabetic kidney disease and slightly low blood pressure.  During a follow-up visit in November, Dr. Graziano instructed Plaintiff to return in one month and advised that further investigation would be necessary if her blood pressure remained low.  He diagnosed

diabetic nephropathy with relatively stable kidney function and hypotension with no evidence of adrenal insufficiency.

The record contains treatment notes from Dr. Danielle Groves (physiatrist) for the period from September to November 2014.  (R. 481-86.)  Plaintiff stated during her initial evaluation in September that she had a history of progressive pain, swelling, and tenderness in the left upper arm after a fall a few weeks earlier.  Physical findings included a left frozen shoulder with only 90 degrees of forward flexion and 75 degrees of abduction.  Dr. Groves noted that x-rays were unremarkable and opined that Plaintiff was likely suffering from rotator cuff impingement syndrome and frozen shoulder from diabetes.  An MRI of Plaintiff's left upper arm was ordered to rule out an expansile mass.  Dr. Groves recommended some home exercises.  During a follow-up visit in November 2014, Dr. Groves explained that the MRI report was relatively unremarkable and revealed mild swelling without muscle strain or ligamentous tear.  Dr. Groves noted that Plaintiff continued to experience a left frozen shoulder accompanied by severe pain and swelling in the left upper arm, with pain radiating down the entire arm.

On January 2, 2015, Plaintiff provided an updated list of her medications:

- Prescribed by Dr. Asokan:  Levemir, Humalog, and Victoza (diabetes); Atenolo (blood pressure); Atorvastatine (cholesterol); Duloxetine, Vicodin, Tramadol, Oxycodone, and Flexeril (pain).

- Prescribed by Dr. Graziano:  Lisinopril (blood pressure/kidneys); Hydrochlorothiazide (blood pressure/kidneys)

- Prescribed by Dr. Grove:  Baclofen (arm spasms).

(R. 209-10.)  During the hearing on January 5, 2015, Plaintiff testified that her current pain medications were Tramadol, Oxycodone, and Flexeril.  (R. 63.)

### 2.    Non-Treating Providers.

In July 2013, Plaintiff underwent a consultative orthopedic examination with Dr. Said Shanawani (neurologist).  (R. 469-74.)  Plaintiff told Dr. Shanawani that she was able to cook and wash dishes, but could not carry the laundry basket, could not sit for any length of time, and could not walk more than 200 feet (although pushing a cart in the supermarket slightly reduced her pain). Physical findings were normal except for:  absent ankle jerks bilaterally; positive straight leg raising in supine and sitting positions; and significant limitation of motion in the cervical and lumbar spine.  Dr. Shanawani opined that Plaintiff could not walk at a reasonable pace but noted that she did not use an assistive device.  He diagnosed discogenic disease affecting lumbar and cervical spine, diabetes mellitus, and history of diagnosis of carpal tunnel.  Cervical spine x-rays ordered by Dr. Shanawani revealed mild degenerative joint disease, while lumbosacral spine x-rays revealed mild scoliosis and no acute disease.

### 3.    Non-Examining Providers.

In April 2013, State Agency reviewing consultant Dr. Joseph Udomsaph opined that Plaintiff:  could stand and/or walk for up to a total of 4 hours in an 8-hour workday; could sit for a total of up to 6 hours in an 8-hour workday; could frequently lift/carry up to 10 pounds and occasionally up to 20 pounds; could frequently balance; could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; and had no pushing/pulling, manipulative, visual, communicative, or environmental limitations.  (R. 76-84.) In August 2013, State Agency reviewing consultant Dr. Andrew Przybyla concurred with Dr. Udomsaph's opinion.  (R. 86-96.)

## V.    DISCUSSION

### A.    Step Three.

The Step Three section of the ALJ's decision reads in its entirety:  "The claimant's impairments, singly or in combination, do not meet or equal the regulatory requirements of any [L]isting.  I have specifically considered Listings 1.04 and 6.05."  (R. 30.)[8]  Plaintiff contends that the ALJ reversibly erred by failing to explain, within this section of the decision, why neither Listing was met.  However, the ALJ need not "use particular language or adhere to a particular format in conducting analysis" so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements for any [L]isting."  *Jones*, 364 F.3d at 505 ("the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review").  Thus, the Court must determine whether the evidentiary discussion – regardless of its placement in the ALJ's decision – supports a finding of not disabled at Step Three pursuant to the applicable legal standards of review.  *See Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146-47 (3d Cir. 2007).

### 1.    Listing 1.04.

Listing 1.04 requires:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

---

[8] The Court analyzes all Listing criteria, as did the ALJ, in effect on March 12, 2015, the date of the ALJ's decision.  The applicable criteria are described in Social Security Administration Program Operations Manual System ("POMS") DI 34121.011, *Musculoskeletal Listings from 06/16/2008 to 09/28/2016*, available at http://policy.ssa.gov/poms.nsf/lnx/0434121011, and POMS DI 34001.020, *Genitourinary Impairments (eff. 12/09/14)*, available at http://policy.ssa.gov/poms.nsf/lnx/0434001020.

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00 B2b.

POMS DI 34121.011.[9]

The ALJ's discussion of the medical evidence regarding Plaintiff's neck and back impairments cited: (a) August 2012 MRI reports revealing herniated discs in Plaintiff's cervical and lumbar spine resulting in compromise of nerve root and nerve root compression; (b) a listing of Plaintiff's pain management treatments; (c) Dr. Weissman's March 2013 report; (d) Dr. Guariglia's March 2013 report; (e) Dr. Shanawani's July 2013 report; and (f) Dr. Grove's September 2014 treatment notes that an EMG studies report for Plaintiff's bilateral lower extremities was positive and demonstrated L5-S1 and S1-S2 radiculopathy. In describing Dr. Weissman's report, the ALJ included functional limitations but omitted findings that Plaintiff had: radiculitis; limited flexion, extension, and rotation of the cervical spine; limited flexion and extension of the lumbar spine with positive straight leg raise in the sitting position; sensory and

---

[9] Under Listing 1.00 B2b, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." POMS DI 34121.011. Listing 1.00J requires an examination of the claimant's ability to ambulate without the assistive device(s) in place. *See id.*

reflex loss on the left side; and bilateral muscle weakness rated 3-4 on a 5-point scale. The ALJ's decision also omitted Dr. Weissman's July 2012 initial physical evaluation findings that Plaintiff had: limited flexion, muscle spasms, and tenderness on palpation in the cervical and lumbar spines; abnormal gross motor testing in the upper and lower extremities; and diminished reflexes and sensitivity in the upper and lower extremities. In describing Dr. Guariglia's report, the ALJ included functional limitations but omitted the finding that Plaintiff had bilateral muscle weakness rated 3 on a 5-point scale. The ALJ's decision also omitted Dr. Guariglia's physical examination findings during the period between February 2012 and September 2013. Although the ALJ's description of Dr. Shanawani's report included findings that Plaintiff had diminished reflexes, significant limitation of motion in the cervical and lumbar spine, and no motor weakness or atrophy, the ALJ omitted the finding that Plaintiff had positive straight leg raise testing in both supine and sitting positions. The Court cannot conduct a meaningful review of the ALJ's finding that Plaintiff did not satisfy the Listing 1.04 criteria because it is unclear whether or how the ALJ considered weighed the omitted evidence. The Court therefore finds that remand is warranted as to Listing 1.04 because the ALJ's Step Three finding in this regard was not supported by substantial evidence.

### 2. Listing 6.05.

Listing 6.05 provides:

Chronic kidney disease, with impairment of kidney function, with A and B:

A.  Reduced glomerular filtration evidenced by one of the following laboratory findings documented on at least two occasions at least 90 days apart during a consecutive 12-month period:

1.  Serum creatinine of 4 mg/dL or greater; or

2.  Creatinine clearance of 20 ml/min. or less; or

3.  Estimated glomerular filtration rate (eGFR) of 20 ml/min/1.73m2 or less.

AND

B. One of the following:

1. Renal osteodystrophy (*see* 6.00C3) with severe bone pain and imaging studies documenting bone abnormalities, such as osteitis fibrosa, osteomalacia, or pathologic fractures; or

2. Peripheral neuropathy (*see* 6.00C4); or

3. Fluid overload syndrome (*see* 6.00C5) documented by one of the following:

    a. Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg despite at least 90 consecutive days of prescribed therapy, documented by at least two measurements of diastolic blood pressure at least 90 days apart during a consecutive 12-month period; or

    b. Signs of vascular congestion or anasarca (*see* 6.00C6) despite at least 90 consecutive days of prescribed therapy, documented on at least two occasions at least 90 days apart during a consecutive 12-month period; or

4. Anorexia with weight loss (*see* 6.00C7) determined by body mass index (BMI) of 18.0 or less, calculated on at least two occasions at least 90 days apart during a consecutive 12-month period.

POMS DI 34001.020.

The ALJ's decision cited the following medical evidence regarding Plaintiff's kidney impairment: that Plaintiff's May 2014 kidney sonogram was normal; that her July 2014 renal artery sonogram was normal; that her kidneys were found to be anatomically normal and not echogenic; that her serologic investigation was negative for causes other than suspected diabetic nephropathy; that her September 2014 kidney biopsy showed progressive vascular sclerosis out of proportion to the level of diabetic nephropathy, possibly due to advanced vascular disease, but relatively stable kidney function. (R. 32-33.) Plaintiff does not cite – and the Court has not identified – any record evidence indicating that any of the Paragraph A or Paragraph B criteria for Listing 6.05 were satisfied. *See* ECF No. 15 at 26 ("Plaintiff will not address this listing with any specificity, as it is not clear that plaintiff actually meets this listing, in which case the error would

be harmless."). The Court therefore finds that remand is not warranted as to Listing 6.05 because any error in the ALJ's Step Three finding in this regard was harmless. *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (no basis for remanding case even if portion of Step Three analysis was deficient where claimant complained "in vague terms that certain impairments were not properly compared, separately and in combination, to the listings" without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not").

**B.**    **Step Four:  RFC Finding.**

The ALJ found that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no bending or reaching overhead; only occasional stooping, crouching, balancing, climbing stairs; sitting/standing at her own option; and off-task up to 10 percent of the day.

(R. 30.) Plaintiff argues that the RFC finding was not supported by substantial evidence because the ALJ erred:  (1) by relying exclusively on an EMG studies report for rejecting handling and fingering limitations; (2) by failing to consider Plaintiff's frozen left shoulder; (3) by ascribing too little weight to Dr. Weissman's opinion; and (4) by discounting Plaintiff's subjective symptoms.

**1.**    **EMG Studies Report.**

During his initial evaluation in July 2012, Dr. Weissman ordered MRIs of Plaintiff's cervical/lumbar spines and EMG studies of Plaintiff's bilateral upper/lower extremities. As noted above, Dr. Weissman's treatment records include the corresponding MRI reports but do not include EMG studies reports. During her initial evaluation in September 2014, Plaintiff provided Dr. Groves with a copy of a prior bilateral lower extremities EMG studies report. Dr. Groves noted that the report revealed sacral radiculopathy at S1-S2 and lumbosacral radiculopathy at L5-S1. Dr. Groves also noted that she could not confirm Plaintiff's statement that a prior bilateral

upper extremities EMG studies report "was Θ [negative]" because Plaintiff did not provide a copy of that report.  The ALJ's Step Four analysis began with the statement that "handling and fingering limitations" were not included "in the residual functional capacity despite the cervical disc herniations and bulges and self-report of radiculopathy because the September 24, 2014 electrodiagnostic studies were negative in upper extremities (Exhibit 7F, p.3 [R. 483])."  (R. 30.) Although the Court is troubled that the ALJ gave dispositive weight to *Plaintiff's lay description* of important diagnostic evidence missing from the record, it is not necessary to decide whether this constituted reversible error.  The ALJ committed reversible error by relying on her own lay opinion that a "negative" bilateral upper extremities EMG studies report precludes handling and fingering limitations.  The Court therefore finds that remand is warranted because the ALJ's rejection of handling and fingering limitations solely on this basis was not supported by substantial evidence.

### 2.    Left Frozen Shoulder.

The ALJ's evidentiary discussion included a fulsome description of Plaintiff's initial evaluation with Dr. Groves in September 2014, including Dr. Groves' notations that:  x-rays were unremarkable; Plaintiff had only 90 degrees of forward flexion and 75 degrees of abduction; Plaintiff was likely suffering from rotator cuff impingement syndrome and frozen shoulder from diabetes; an MRI was ordered to rule out an expansile mass; and cognitive exercises and physical therapy were prescribed to get the upper arm moving.  (R. 33.)  As the ALJ explained:

> Clinical notes from Dr. Groves dated November 12, 2014, indicate that there was left upper arm swelling and pain and left frozen shoulder with radiation down the entire arm.  However, it was noted that an MRI of the left humerus and upper [arm] was relatively unremarkable without muscle strain or ligamentous tear, and only mild swelling in the left upper arm.

(R. 33.)  Plaintiff contends that the ALJ did not fully account for the left frozen shoulder by including an RFC limitation for no overhead reaching:  "Plaintiff had almost no motion in that shoulder; she could not move it for any reasonable work activity, not just reaching overhead." ECF No. 15 at 30.  The Court disagrees.  As reflected by Dr. Groves' treatment notes, Plaintiff did not have zero mobility in her left shoulder.   Dr. Groves did not opine as to any functional limitations.  Plaintiff testified that, as of January 2015, she could not lift her arms over her head because of radiating neck pain but she was able to drive.  Plaintiff did not testify as to shoulder pain in either arm.  The Court therefore finds that substantial evidence supports the RFC finding as related to Plaintiff's left frozen shoulder.

### 3.    Dr. Weissman's Opinion.

A treating opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."). When a treating opinion cannot be given controlling weight, it still may be entitled to some deference based on the ALJ's consideration of the following factors, which the ALJ must also consider as to non-treating and non-examining opinions:   length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source.  20 C.F.R. § 404.1527(c)(2)-(6); *see Plummer*, 186 F.3d at

429 (ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided").

The General Medical Form completed by Dr. Weissman in March 2013 advised that Plaintiff had a history of:  severe chronic neck and lower back pain; radiation of pain to bilateral upper and lower extremities; and frequent numbness and tingling in arms and feet.  Dr. Weissman cited Plaintiff's August 2012 MRI reports and also noted his physical findings that she:  had limited flexion, extension, and rotation of the cervical spine; had limited flexion and extension of the lumbar spine with positive straight leg raise in the sitting position; was unable to squat or walk on heels/toes; had sensory and reflex loss on the left side; had bilateral muscle weakness rated 3-4 on a 5-point scale; and could walk at a reasonable pace.  He explained that Plaintiff's diagnoses were:  HNP/DB (herniated nucleus pulposus/disc bulge) at C3-4, C4-5, C5-6, C6-7, and L4-5; radiculitis; and myalgia.  Dr. Weissman opined that Plaintiff could stand and/or walk less than 2 hours per day; could sit less than 6 hours per day; must be able to change positions as needed; could occasionally lift/carry up to 5-10 pounds; was advised against pushing/pulling; and, due to numbness, could not "perform gripping and handling properly."   The ALJ assessed Dr. Weissman's March 2013 opinion as follows:

> On March 4, 2013, Allan Weissman, M.D., a treating medical doctor, completed a general medical report.  It was opined that in an eight hour workday, the claimant is able to sit less than six hours a day, stand/walk less than two hours a day and lift/carry 5 to 10 pounds occasionally.  It was further opined that the claimant must be able to change positions as needed.  It was further opined that the claimant could not perform gripping and handling properly due to numbness.
>
> I give some weight to the opinion of Dr. Weissman.  Although his opinion was generally credible, the sit/stand limits were arbitrary; and the handling/fingering limits were not borne out by the negative EMG.

(R. 33.)  The decisional RFC reflects that the ALJ adopted Dr. Weissman's opinion that Plaintiff could lift/carry up to 10 pounds occasionally and needed to change positions at will but rejected

Dr. Weissman's opinion as to sit/stand, handling/fingering, and pushing/pulling limitations. Plaintiff contends that the ALJ reversibly erred by rejecting these aspects of Dr. Weissman's opinion. The Court agrees because, as discussed below, the ALJ failed to identify contradictory evidence, relied on her own lay opinion, and failed to consider the requisite regulatory factors.

The MRI reports and pain management procedures cited in the ALJ's decision do not contradict Dr. Weissman's opinion; indeed, Dr. Weissman included this evidence among the bases for his opinion. Although Dr. Shanawani did not opine as to Plaintiff's functional limitations, his report also does not contradict Dr. Weissman's opinion. Dr. Shanawani did not review the MRI reports for Plaintiff's cervical and lumbar spines. Plaintiff's "admissions" to Dr. Shanawani that "she was able to cook and wash dishes, but could not carry the basket for the laundry" and "that pushing a cart in the supermarket slightly reduced the pain" is not inconsistent with an inability to sit less than 6 hours or stand less than 2 hours. (R. 32.) Nor is any inconsistency presented by Dr. Shanawani's notations that Plaintiff demonstrated "significant limitation of motion in the cervical and lumbar spine" and was taking Oxycodone and Flexeril for pain. The ALJ rejected Dr. Guariglia's shared opinion that Plaintiff could sit less than 6 hours and stand/walk less than 2 hours because these limitations "appear to be arbitrary and not supported by the medical evidence of record" or Dr. Guariglia's "own clinical notes." (R. 34.) However, the ALJ did not point to any contrary medical evidence of record nor did she describe any of Dr. Guariglia's treatment notes – which, among other findings, revealed limited range of motion in Plaintiff's cervical and lumbar spines on multiple occasions. As discussed above, the ALJ erroneously relied on her lay opinion in finding that Plaintiff's self-reported "negative" bilateral upper extremities EMG studies report precludes any handling and fingering limitations. The ALJ repeated this error by rejecting Dr. Weissman's opinion for the same reason. Finally, the ALJ's decision did not mention, let alone

consider, that Dr. Weissman – who has nearly 30 years of specialized knowledge and expertise in pain management – treated Plaintiff at least 16 times over an 8-month period during which he performed increasingly aggressive nonsurgical pain management procedures.  The Court therefore finds that remand is warranted for a reassessment of Dr. Weissman's opinion.[10]

### C.    Plaintiff's Subjective Symptoms.

"Credibility determinations as to a claimant's testimony, regarding pain and other subjective complaints are for the ALJ to make."  *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).  The ALJ is required to assess the credibility of a claimant's subjective complaints using a two-step process.  *See* 20 C.F.R. § 416.929.  First, the ALJ must determine whether the record demonstrates that the claimant possesses a medically determinable impairment that could reasonably produce the alleged symptoms.  *See Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 119-20 (3d Cir. 2016) ("while there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself") (citations omitted).  Second, the ALJ must assess the credibility of the claimant's complaints regarding the intensity of the symptoms.  To do this, the ALJ must determine if objective medical evidence supports the claimant's complaints.  If

---

[10] *See* https://npidb.org/doctors/allopathic_osteopathic_physicians/pain-medicine_207lp2900x/1063546208. aspx; https://health.usnews.com/doctors/allan-weissman-597468.   Defendant argues that Dr. Weissman's opinion was properly discounted because both State Agency reviewing consultants opined that he "has had only a brief treating relationship with the source, which has not been long enough to obtain a longitudinal picture of the individual's impairment-related limitations and restrictions."  ECF No. 16 at 16 (quoting R. 82-83, 94).  This is an impermissible post-hac rationale because the ALJ's decision did not even mention the State Agency reports.  The Court also notes that "[c]ourts have rejected 'short treatment history' as a rationale for discounting a medical opinion for periods as short as three months."  *Carroll v. Comm'r of Soc. Sec.*, No. 16-cv-3443, 2018 WL 1138307, at *8 (D. Arizona Mar. 2, 2018); *cf. Fox v. Berryhill*, 2017 WL 3252184, at *2 (S.D. Cal. Jul. 31, 2017) (ALJ required to explain why treating history of 6 sessions over 5 months was insufficient because, "[i]f [treating physician's] opinion cannot be trusted after six sessions, then how can the ALJ give so much more weight to the opinions of the agency consultants (who never saw [claimant]) and the examining physician (who saw [claimant] once but never treated her)?").

so, the complaints should be given great weight and "may not be disregarded unless there exists contrary medical evidence." *Id.* If objective medical evidence does not support the claimant's complaints, then the ALJ must consider other factors, including: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any other measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, at *4 (S.S.A. Jul. 2, 1996).[11]

The ALJ stated that, "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 31.) Plaintiff contends that this finding constitutes reversible error. The Court agrees because the ALJ's finding relied on a flawed assessment of Dr. Weissman's opinion, failed to identify conflicting

---

[11] Social Security Ruling 96-7p applies to SSA decisions that, like the ALJ decision in this case, were made prior to March 28, 2016.

medical evidence, and failed to explain the above-listed factors.  The Court therefore finds that remand is warranted because the ALJ's assessment of Plaintiff's subjective symptoms is not supported by substantial evidence.

### D.        Step Four:  Past Relevant Work.

In this section of the decision, the ALJ listed the DOT numbers provided by the VE for the 5 jobs that comprise Plaintiff's past relevant work; accepted the VE's testimony "in accordance with SSR 00-4p;" and – as to the collection clerk (DOT#241.357-010) and receptionst (DOT#237.367-038) jobs – stated that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as generally performed."  (R. 34 (citing Social Security Ruling 00-4p, *Titles II & XVI: Use of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions*, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000)).)  The Court cannot meaningfully review this finding because both the decisional RFC and the credibility assessment were flawed.  The Court offers the following observations regarding Plaintiff's contention that the past relevant work finding was not supported by substantial evidence because: (1) the ALJ "never qualified the witness she called to give opinions on vocational matters as an expert witness" (ECF No. 15 at 30-31) and never gave Plaintiff's former counsel "an opportunity to examine the witness on the witness' expertise" (ECF N0. 18 at 5); and (2) the ALJ failed to comply with Social Security Ruling 96-8p.

Plaintiff first argues that the ALJ committed reversible error by failing to follow the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX"), which requires an ALJ to ask the VE to confirm his or her impartiality, expertise, and professional qualifications; verify that the VE has examined all vocational evidence of record; ask the claimant whether he or

she has any objection to the VE testifying; and admit into the record a written statement or resume of the VE's qualification.  ECF No. 15 at 31 (citing HALLEX I-2-6-74 (*Testimony of a Vocational Expert*) & I-2-1-31 (*Professional Qualifications of Vocational Sources*)).  Plaintiff's reliance on HALLEX is misplaced because manuals promulgating official Social Security policy and operating instructions "do not have the force of law."  *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)); *see also Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 854 (3d Cir. 2007).  Although Plaintiff complains that "the witness was not even fully identified in the transcript and we have no idea of her qualifications" (ECF No. 16 at 33), Plaintiff and her former counsel know the VE's identity and contact information because the record includes the ALJ's letter to the VE seeking testimony (R. 124, 143).  Plaintiff's former counsel neither objected to the VE's testimony nor questioned the VE's qualifications when given an opportunity at the hearing to question the VE generally.  (R. 43-44, 66-73.)  The Court therefore finds that any error was harmless.  Nevertheless, the Court urges that the relevant HALLEX provisions be followed on remand.

Plaintiff next argues that the ALJ committed reversible error by failing to "determine if the work as actually performed could still be done before determining if the work as generally performed could be done."  ECF No. 18 at 5 (citing Social Security Ruling 96-8p, *Titles II & XVI: Assessing Residual Functional Capacity In Initial Claims*, 1996 WL 374184 (S.S.A. Jul. 2, 1996)); *see* ECF No. 15 at 34.  Plaintiff's argument misapprehends Social Security Ruling 96-8p and misstates the ALJ's past relevant work analysis.  Social Security Ruling 96-8p instructs that it is impossible to determine whether a claimant can perform past relevant work as actually or generally performed if the RFC is "expressed initially in terms of the exertional categories" (i.e., sedentary, light, medium, heavy, very heavy) instead of as a function by function assessment.  SSR 96-8p,

1996 WL 374184, at *3.   This is because some jobs are performed at higher exertional or nonexertional demands than the given exertionl category, while some jobs may not require all of the exertional and nonexertional level demands necessary to do the full range of work at the given exertional category.  *See id*.

The ALJ complied with Social Security Ruling 96-8p because the RFC finding was expressed as a function by function assessment – namely, sedentary work subject to specific exertional and non-exertional limitations, including a sit-stand option.   The VE testified that a hypothetical individual with Plaintiff's RFC could perform the jobs of collection clerk and receptionist.   Plaintiff does not point – nor can the Court identify – any contrary evidence.   The Court therefore finds that any error was harmless.   Nevertheless, the Court urges that the record on remand include explicit VE questioning about Plaintiff's ability to do past relevant work both as actually and generally performed.

## V.    CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case to the Commissioner for further proceedings in accordance with the preceding instructions and the accompanying Order.


Dated:  February 7, 2019                              s/ Paul A. Zoss
At Newark, New Jersey                         PAUL A. ZOSS, U.S.M.J.